KRICK v. JANSEN.

(Circuit Court of Appeals, Second Circuit. May 29, 1894.)

PATENTS—FLORAL DESIGNS.
 The Krick patent (No. 408,416) for a floral design, consisting of a foundation having holes in it, combined with picks, for holding the flowers in position, *held* not to show patentable invention. 59 Fed. 364, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit by William C. Krick against Edward Jansen for the infringement of a patent. The defendant demurred to the bill. The second ground of demurrer assigned was the want of novelty on the face of the patent. The demurrer on this ground was overruled. See 52 Fed. 823. The plaintiff subsequently obtained a decree. See 59 Fed. 364. The defendant thereupon appealed.

Louis C. Raegener, for appellant.
Isaac S. McGiehan, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This appeal is from a decree of the circuit court which sustained the validity of letters patent No. 408,-416, dated August 6, 1889, and issued to William C. Krick, for an improvement in floral letters or designs, and which adjudged that the defendant had infringed the patent. The invention relates to floral letters or floral designs for decorative purposes, and consists of flowers secured to a foundation piece of wood, metal, or pasteboard, of the required size and shape, and provided with small holes in the back of the piece, into which toothpicks are inserted to hold the whole design in position. The patentee says, in his specification, that the object of the invention is—

"To provide a letter or ornament made of small flowers wired or glued to a wooden foundation piece, which is adapted to be held in position by means of toothpicks inserted in its back, all as will be hereinafter explained. In marking or forming designs on floral pieces, it has been the custom heretofore to tie the flower to the end of a toothpick, and stick the toothpick into the floral piece, and repeating the same process until the design, letter, or figure is complete. In practice, I have found this to be a very tedious and slow process—First, because it takes a great deal of time to tie each flower singly to the pick; and, second, because the design, letter, or figure is very apt to be made crooked when each flower is applied to the piece singly."

The specification further says as follows:

"To construct my improved floral letter or design, I first cut the foundation piece, A (of wood, metal, or stiff pasteboard), to requisite size and shape. The holes, c, c, are then made to receive the pick. I then secure the flowers by binding the stem portion to the form either with wire or fine twine. As each letter or design is secured with two or three picks, it can be accurately adjusted to the floral piece without disturbing the other flowers."

The claim was for—

"A floral letter, figure, or design for decorating purposes, consisting of the flowers, a, secured to the foundation piece, A, which is formed to create the letter or figure desired, and provided with the holes, c, in the combination with the picks, e, all as herein described."

It appears from the testimony of the patentee that, prior to the date of his invention, floral designs, such as wreaths and crosses, had been made of wood, and that two methods were employed to attach the flowers to the wooden foundation,—one by winding them upon the wood with thread or wire, and the other by putting moss around or upon the foundation, and fastening the flowers to toothpicks, which were afterwards inserted in the moss. It was also testified that it had long been customary to decorate the interior walls of churches and Sunday-school rooms, during festival periods, by words apparently formed of flowers or evergreens, which were made by cutting the letters out of a foundation of pasteboard or cardboard, and covering the face of the foundation with flowers or leaves. It thus appears that, before the date of the invention, wooden frames, in the shape of wreaths or crosses, were used as a foundation to

which the flowers which covered the frame were attached by picks thrust into the moss, and that it was usual to make a foundation of letters cut on or from a sheet of cardboard, the face of which was covered with flowers. After the use of wooden frames as a foundation for floral decorations, which were secured to the moss by picks, and after the use of cardboard letters for analogous purposes, there was no invention in securing flowers to a foundation piece so formed as to create the desired letter or figure, although provided with small holes, through which the wooden picks are inserted to fasten the letter to the entire floral ornament. The patentee added holes in the back of the wooden foundation to the pre-existing devices. We do not perceive, in the wooden letters with the holes, notwithstanding its popularity, a patentable improvement upon the wooden cross or wreath. This result obviates the necessity of examining the question of infringement. The decree of the circuit court is reversed, with costs, and the case is remanded to that court, with instructions to dismiss the bill, with costs of the circuit court.